AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
At Albuquerque NM
MAY 2 3 2016
MATTHEW J. DYKMAN
CLERK

United States of America
v.
Mario Osorio-Espinoza

Defendant(s)

Case No. 16-MJ-2382

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 19, 2016__ in the county of __Bernalillo__ in the
_____ District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 846 | Conspiracy to Distribute Methamphetamine |
| 18 USC 841(a)(1) and (b)(1)(A) | Possession with Intent to Distribute 500 grams and more of a mixture and substance containing methamphetamine |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Alfred Justin Allen, Special Agent
Printed name and title

telephonic signature authorized
9:47 AM

Sworn to before me and signed in my presence.

Date: 5/21/2016

_____
Kirtan Khalsa
Judge's signature

City and state:   Albuquerque, New Mexico     Kirtan Khalsa, United States Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

United States of America

v.

Mario OSORIO-Espinoza

Defendant.

## AFFIDAVIT

I, Alfred J. Allen, being duly sworn, hereby depose and state the following:

### INTRODUCTION AND AGENT BACKROUND

1. Your Affiant is a Special Agent (SA) with the Department of Homeland Security, U.S. Immigration & Customs Enforcement (ICE), Homeland Security Investigations (HSI), and has been employed by HSI as such since March 2010. Prior to that your affiant was a Probation and Parole Officer in Louisiana for approximately 8 years. Your Affiant successfully completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center. Your Affiant is currently assigned to HSI Albuquerque to investigate violations of Immigration and Customs laws, which includes but is not limited to financial crimes, illegal narcotics investigations, fraud and other Federal crimes.

2. The contents of this affidavit are based on information received from the New Mexico State Police and other HSI Special Agents during the course of the investigation and does not contain every detail of the events. Rather, it contains only the facts that your affiant believes are necessary to establish probable cause in support of a criminal complaint against Mario OSORIO-Espinoza for violation of Title 21, United States Code, Section 846; Conspiracy to Distribute Methamphetamine and 21 USC 841 (a)(1) and (b)(1)(A); Possession with Intent to Distribute 500 grams and more of a mixture and substance containing methamphetamine.

### RELEVANT STATUTES

3. This investigation concerns alleged violations of Title 21, United States Code, Section 846; Conspiracy to Distribute Methamphetamine and 21 USC 841 (a)(1) and (b)(1)(A);

1

Possession with Intent to Distribute 500 grams and more of a mixture and substance containing methamphetamine.

## DETAILS OF INVESTIGATION

4. On or about May 19, 2016, at approximately 1209 hours, New Mexico State Police Officer (NMSP) Officer Ruben Aguirre conducted a stop on a black 2011 Jeep, bearing California license plate 6UZU266, for a traffic violation. Upon contacting the driver, later identified as Mario OSORIO-Espinoza, Officer Aguirre noticed that OSORIO-Espinoza appeared to be nervous and was avoiding eye contact. Officer Aguirre requested his driver's license, registration and proof of insurance. OSORIO-Espinoza and his passenger, later identified as Victor Hugo LANGARICA-Salazar, began looking for the requested documents. While looking for the documents, both LANGARICA-Salazar and OSORIO-Espinoza's hands were shaking. Officer Aguirre also noticed an unknown fragrance emitting from the interior. Officer Aguirre asked OSORIO-Espinoza to exit the vehicle and come back to his patrol unit. Officer Aguirre began issuing a citation for the traffic infraction. Officer Aguirre asked OSORIO-Espinoza if he could talk with him about his travels while writing the citation and OSORIO-Espinoza answered yes. OSORIO-Espinoza stated he was traveling from Los Angeles, California to Lubbock, Texas, that he was a musician, and he was going to play at a party. OSORIO-Espinoza stated that the passenger was his uncle and that they would be returning to California on Saturday. OSORIO-Espinoza stated that the vehicle belonged to him and database checks confirmed the vehicle is registered in OSORIO-Espinoza's name.

5. Officer Aguirre explained to OSORIO-Espinoza that he was going to check the Vehicle Identification Number and asked if he could open the door to confirm the Federal Nadar sticker, to which OSORIO-Espinoza said yes. While confirming this information, Officer Aguirre was overwhelmed with an odor of an unknown fragrance emitting from the interior of the vehicle. As Officer Aguirre was checking the numbers, he asked LANGARICA-Salazar if it was okay with him to talk about his travel while viewing the numbers and LANGARICA-Salazar said yes. Officer Aguirre asked LANGARICA-Salazar where he and OSORIO-Espinoza were coming from and he replied Los Angeles. Officer Aguirre asked where they were going and he said "Cubec" which was just after Albuquerque and was located in Texas. Officer Aguirre asked who he was travelling with and he replied OSORIO-Espinoza. LANGARICA-Salazar stated that OSORIO-Espinoza's was his daughter's boyfriend. While talking to LANGARICA-Salazar, Officer Aguirre observed that he was avoiding eye contact and was fidgety.

6. Officer Aguirre returned to his patrol vehicle and handed OSORIO-Espinoza the citation, along with his driver's license and advised him he was free to go. OSORIO-Espinoza turned around and walked back toward his vehicle. Officer Aguirre called out to OSORIO-Espinoza, and he turned around and walked back to the patrol vehicle undirected by Officer Aguirre. Due to the above listed behaviors exhibited by both

occupants and Officer's Aguirre's training and experience, he asked OSORIO-Espinoza if he could ask him some more questions to which OSORIO-Espinoza agreed. Officer Aguirre asked OSORIO-Espinoza if it was his first time to Lubbock to which he replied yes. Officer Aguirre asked how OSORIO-Espinoza would know where to go and he stated he would need to call when he got there and would get directions from his friend however, OSORIO-Espinoza could not provide a last name for the friend.

7. Officer Aguirre returned to OSORIO-Espinoza's vehicle and explained to LANGARICA-Salazar that he had issued OSORIO-Espinoza a citation. Officer Aguirre told him he was free to leave then asked if he could ask some questions to which LANGARICA-Salazar said yes. Officer Aguirre asked what instrument he played and LANGARICA-Salazar said that he did not play in the band but came with OSORIO-Espinoza to help him drive so he didn't fall asleep. While talking to LANGARICA-Salazar, Officer Aguirre observed that he was shaking, avoiding eye contact, looking up to think about answers to questions, his lip was twitching and he appeared to be nervous.

8. Officer Aguirre's training and experience led him to believe that both occupants were involved in criminal activity. Officer Aguirre requested and received written consent from both OSORIO-Espinoza and LANGARICA-Salazar to search their property and the vehicle.

9. During the search, Officer Aguirre checked a black speaker box that was in the rear of the vehicle by removing two speakers. Officer Aguirre observed packages inside the speaker box. Officer Aguirre cut inside a package and observed a crystal like substance that based on his training and experience led him to believe was crystal methamphetamine.

10. OSORIO-Espinoza and LANGARICA-Salazar were placed under arrest and transported along with the vehicle to the NMSP location on Carlisle in Albuquerque for further inspection.

11. A field test of the substance conducted by Agent Jeremy Yazzie with NMSP returned positive results for the presence of Methamphetamine. The packages were later put on a scale and weighed approximately 29.54 kilograms with packaging.

12. Agent Rafael Gomez of NMSP conducted a post Miranda interview of both subjects. LANGARICA-Salazar first denied any knowledge of the packages containing Methamphetamine but later admitted he was transporting the drugs and would be paid $5,000.00. LANGARICA-Salazar stated that this was his second trip and the first one was to Arkansas.

13. OSORIO-Espinoza stated that this was his first time accompanying LANGARICA-Salazar. He was instructed to bring a speaker box with him to an unknown residence in California. OSORIO-Espinoza stated that he stood by while his vehicle was loaded with the speaker box.

## CONCLUSION

14. Based on the foregoing, your affiant believes that there is probable cause that on or about May 19, 2016, in the State and District of New Mexico, Mario OSORIO-Espinoza, did violate Title 21, United States Code, Section 846; Conspiracy to Distribute Methamphetamine and 21 USC 841 (a)(1) and (b)(1)(A); Possession with Intent to Distribute 500 grams and more of a mixture and substance containing methamphetamine.

*[signature]*

Alfred Justin Allen, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
This ___ day of May, 2016

*Kirtan Khalsa*
HONORABLE KIRTAN KHALSA
United States Magistrate Judge

*Telephonic signature authorized*
*9:47 A.M*

4